UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                                      CASE NO: 8:14-cr-306-T-36MAP

CORDELL JONES
_____/

## ORDER

This cause comes before the Court upon Defendant Cordell Jones' Motion to Dismiss Indictment with Prejudice (Doc. 14) and Motion to Suppress (Doc. 21).  The United States responded in opposition to these motions (Docs. 20, 27).  On September 23, 2014, the Court held an evidentiary hearing and oral argument on these motions.  Doc. 31.  Special Agent Ross Spencer testified at the hearing.  The Court, having considered the parties' briefs, the evidence presented at the hearing, and the oral argument, and being fully advised in the premises, will now GRANT-IN-PART and DENY-IN-PART Jones' Motion to Dismiss Indictment with Prejudice and DENY Jones' Motion to Suppress.

## I.      FINDINGS OF FACT[1]

This matter arises out of a tax fraud scheme in which Jones allegedly participated.  Jones encountered IRS agents in relation to this matter in November 2012, when several special agents went to his residence in an attempt to execute an arrest warrant for Raunta Ellison, Jones' son-in-law.  During that visit, Jones permitted the agents to enter his home and escorted them around, but Ellison was not present.

---

[1] The Court derives the facts from the testimony and exhibits presented at the hearing.  Facts are undisputed unless otherwise noted.

In December 2012, IRS agents once again visited Jones' residence. As with their prior visit, the agents began by inquiring as to the whereabouts of Ellison, and Jones permitted them to enter and escorted them around the house. After a search of the house, the agents determined that Ellison was not present. Jones' daughter, Princess Jones, and her boyfriend were present at the house. Special Agent Ross Spencer then asked Jones if they could speak somewhere. Jones directed them to a back room around a pool table, and there Special Agents Spencer and Don Williams proceeded to interview him. At first, the agents asked Jones questions about Ellison. The conversation, however, turned quickly to Jones' participation in tax fraud activities. The agents and Jones discussed bank accounts that they believed Jones had opened, deposited, or directed that fraudulently obtained tax returns be deposited into. Jones initially denied any knowledge or involvement. But after the agents presented him with a photograph of him depositing a check from Berniece Jones into his account, he began to admit his involvement in the scheme. Jones was very cooperative. At the end of the interview, the agents presented Jones with a target letter from the U.S. Attorney's Office, which stated that they had probable cause to arrest him. At that point, Jones stated that he would need assistance in obtaining an attorney.

In total, the interview lasted approximately three hours, during which time Jones was never advised of his *Miranda* rights.[2] Special Agent Spencer wore a bulletproof vest over a polo shirt and khaki pants and carried a firearm in either a hip or thigh holster. At one point, Special Agent Williams advised Jones that it was a crime to lie to federal law enforcement. And although the agents permitted Jones to use the bathroom, for officer safety he was escorted there by Special Agent Williams, who looked around the bathroom. At no time during the interview, however, was Jones ever placed under arrest, told that he was not free to leave, or placed in restraints, and the

---

[2] *See Miranda v. Arizona*, 384 U.S. 436 (1966).

agents never unholstered their firearms.  Further, during the interview, no threats were made to Jones.

Jones was subsequently arrested on September 5, 2013 pursuant to a federal complaint charging him with conspiracy, theft of public money, and aggravated identify theft in violation of 18 U.S.C. §§ 371, 641, and 1028A, and was detained at the Pinellas County Jail.  On September 17, 2013, a proposed plea agreement was mailed to Jones.  At two subsequent meetings, he met with federal agents to evaluate his potential to render substantial assistance to law enforcement and earn a motion for downward departure.  While plea negotiations were ongoing, Jones agreed to a 30-day extension to the time for the United States to seek an indictment.  The United States finally returned a seven-count indictment on July 17, 2014, which charges Jones as follows:  Count I, conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349; Counts II to VI, substantive wire fraud in violation of 18 U.S.C. § 1343; and Count VII, aggravated identify theft in violation of 18 U.S.C. 1028A.

Jones now seeks to dismiss the indictment with prejudice because of the delay between his arrest and the indictment.  Jones also seeks to exclude from evidence the statements he made during the December 2012 interview because he was not advised of his *Miranda* rights before making them.

## II.    DISCUSSION

### A.    Motion to Dismiss Indictment

#### 1.    *Dismissal Under 18 U.S.C. §§ 3161 and 3162*

The Speedy Trial Act requires "[a]ny information or indictment charging an individual with the commission of an offense" to be filed "within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges."  18 U.S.C. §

3161(b).  If no indictment is filed within the prescribed time limit, the charge must be dismissed or otherwise dropped.  *See* 18 U.S.C. § 3162(a).  The district court determines whether such dismissal should be with or without prejudice, *see Zedner v. United States*, 547 U.S. 489, 509 (2006), and in making this determination, considers, *inter alia*, "the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of reprosecution on . . . the administration of justice," 18 U.S.C. § 3162(a)(2).

Jones concedes that the charges against him are serious.  He argues, however, that the government's unjustified delay of 10 months and 12 days to indict him warrants dismissal of all seven counts with prejudice.  He adds that this delay necessarily adversely affected the administration of justice, and that permitting the government to proceed with the prosecution would render meaningless the protection provided by the Speedy Trial Act.  In response, the Government concedes that it failed to timely indict Jones with regard to Count VII, and agrees that that count should be dismissed with prejudice.  It argues, however, that Counts I through VI should not be dismissed because they charge crimes that are different from those alleged in the criminal complaint.

The Court agrees with the Government.  Importantly, as the Eleventh Circuit held in *United States v. Derose*, 74 F.3d 1177, 1182-83 (11th Cir. 1996), a charge in the indictment is required to conform to the requirements of the Speedy Trial Act only if the criminal complaint also contains the substantive charge.  Here, the violations in the criminal complaint—conspiracy to defraud the United States, steal government funds, and commit aggravated identify theft in violation of 18 U.S.C. §§ 371, 641, and 1028A—are "distinct substantive offenses, requiring proof of different elements," from Counts I through VI of the indictment, which allege conspiracy to commit wire

4

fraud in violation of 18 U.S.C. § 1349 and substantive wire fraud in violation of 18 U.S.C. § 1343. *See United States v. Brown*, 183 F.3d 1306, 1314 (11th Cir. 1999).

Jones does not contend that these crimes are not separate or distinct. Rather, he appears to suggest that Counts I through VI of the indictment should nevertheless be dismissed because the underlying facts from which they arise are the same as those supporting the charges in the criminal complaint. However, this argument, which appears to be an attempt to invoke the "gilding exception" articulated by the Fifth Circuit in *United States v. Nixon*, 634 F.2d 306, 309 (5th Cir. 1981), is not persuasive here. First, although the Eleventh Circuit has not expressly decided whether the gilding exception is applicable to the Speedy Trial Act, it has suggested that it does not. *See United States v. Keel*, 254 Fed. App'x 759, 761 (11th Cir. 2007) ("the fact that a subsequent charge arises out of the same criminal event as an earlier charge does not mean that the earlier charge triggers the [Speedy Trial Act] for purposes of the later charge") (citing *Derose*, 74 F.3d at 1184). Second, even if the gilding exception were to exist for purposes of the Speedy Trial Act, it would not apply here, where the wire fraud charges in the indictment do not merely "gild" the charges in the complaint. Indeed, wire fraud is completely distinct from theft of government funds and aggravated identity theft, and cannot gild a conspiracy charge, *see Derose*, 74 F.3d at 1184, and conspiracy to commit wire fraud is likewise distinct.

In sum, the requirements of the Speedy Trial Act do not apply to Counts I through VI of the indictment because these counts charge Jones with offenses separate and distinct from those in the criminal complaint. The Court accordingly will not dismiss those counts on that basis. The Court will, however, dismiss Count VII of the indictment with prejudice because it was brought in violation of the Speedy Trial Act, as the government concedes.

2.    *Dismissal for Violation of Due Process*

To establish a due process violation for a pre-indictment delay, a defendant must show that the delay caused actual prejudice to his defense and that the delay resulted from "a deliberate design by the government to gain a tactical advantage." *United States v. Thomas*, 62 F.3d 1332, 1339 (11th Cir. 1995). Here, Jones has not alleged, or established, facts sufficient for either of the elements, and states only that his prolonged incarceration prior to indictment violated his due process rights. Because there is no evidence that Jones' due process rights were violated, the Court therefore will not dismiss the indictment on this ground.

3.    *Dismissal Under the Sixth Amendment*

The Sixth Amendment grants to the accused in all criminal prosecutions "the right to a speedy and public trial." U.S. Const. Amend. VI. This right, however, "does not attach before a defendant is accused or arrested." *Derose*, 74 F.3d at 1185 (citing *United States v. Marion*, 404 U.S. 307, 317 (1971)). Here, Count VII of the indictment charges Jones with a crime for which he was arrested on September 5, 2013. However, the other counts of the indictment charge Jones with crimes of which he was never previously accused, nor for which he was previously arrested. *See* Section II.A.1, *supra*. The United States has agreed to dismiss Count VII of the indictment with prejudice, and, with regard to the other counts, Jones has not alleged (and cannot credibly allege) that the approximately two weeks between the date of the indictment and the filing of his motion constitutes an unreasonable delay. Accordingly, Jones does not have a claim for a violation of his Sixth Amendment right to a speedy trial. *See Doggett v. United States*, 505 U.S. 647, 652 & n.1 (1992) (holding that, to trigger a Sixth Amendment inquiry, the accused must first demonstrate that there has been some "presumptively prejudicial" delay, and that "courts have generally found postaccusation delay 'presumptively prejudicial' at least as it approaches one year").

4.      *Dismissal Under Federal Rule of Criminal Procedure 48*

Federal Rule of Criminal Procedure 48 permits a court to dismiss an indictment if "unnecessary delay" occurs in presenting a charge to a grand jury, filing an information against a defendant, or bringing a defendant to trial.   This rule "vests much discretion in the trial court, and dismissal is mandatory only if the defendant's constitutional rights have been violated."  *United States v. Knight*, 562 F.3d 1314, 1324 (11th Cir. 2009) (quotation marks and citation omitted). Because there has been no constitutional violation, *see* Sections II.A.2 & 3, *supra*, the Court is not required to dismiss the indictment.  And, as noted in Section II.A.1, *supra*, Counts I through VI of the indictment charge crimes different from those for which Jones was arrested, so the delay is largely unrelated to the relief requested.  *See United States v. Reme*, 738 F.2d 1156, 1164 (11th Cir. 1984).  In light of these findings and the seriousness of the crimes with which Jones has been charged, the Court declines to exercise its discretion to dismiss the indictment on this ground.

   **B.      Motion to Suppress**

The Fifth Amendment provides, in relevant part, that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself . . . ."  U.S. Const. Amend. V.  In *Miranda v. Arizona*, 384 U.S. 436, 478-79 (1966), the Supreme Court established procedural safeguards for preserving this right by requiring that authorities warn an individual, prior to any questioning, of his or her right to remain silent and right to an attorney, or any evidence obtained from the interrogation will be excluded.  Importantly, however, this requirement applies only "when an individual is taken into custody or otherwise deprived of his freedom by the authorities in any significant way . . . ."  *Id.* at 478.

7

Jones argues that his December 2012 interview must be suppressed because it was custodial in nature. Because it is undisputed that Jones was not placed under arrest at any time before or during the interview, it must be established that, "under the totality of the circumstances, a reasonable man in his position would feel a restraint on his freedom of movement to such extent that he would not feel free to leave." *United States v. Brown*, 441 F.3d 1330, 1347 (11th Cir. 2006) (quotation marks and citation omitted). In making this determination, a court considers, *inter alia*, "whether the officers brandished weapons, touched the suspect, or used language or a tone that indicated that compliance with the officers could be compelled . . . as well as the location and length of the detention." *United States v. Luna-Encinas*, 603 F.3d 876, 881 (11th Cir. 2010) (quotation marks and citation omitted).

Here, the evidence fails to demonstrate that Jones was subject to a custodial interview. Importantly, although not dispositive, the interview took place at a location familiar to Jones—at his residence in a room of his choosing—which weighs heavily in favor of finding a non-custodial setting. *See Brown*, 441 F.3d at 1348. Further, although accompanied, Jones was free to use the bathroom, and there is no evidence that the agents ever physically restrained or touched him in any way. Additionally, Jones was never told that he was under arrest. Jones was free to ask the agents to leave. And although the agents were armed, there were only two of them and no weapons were brandished. The situation here is unlike that in *Orozco v. Texas*, 394 U.S. 324, 325 (1969), where the defendant was interrogated in his bed at 4 a.m. by four officers who told him that he was under arrest.

The only evidence that could weigh in favor of a finding that the interview was custodial in nature is the fact that an agent told Jones during the interview that lying to them was a crime and the length of the interview, approximately three hours. However, considering and weighing

8

the totality of the circumstances, Jones was not so restrained that he would not feel free to leave. Accordingly, the agents were not required to read Jones his *Miranda* rights prior to the interview, as he was not in custody.  Therefore, the Court will deny Jones' motion to suppress.

## III.   CONCLUSION

Accordingly, it is hereby **ORDERED AND ADJUDGED**:

1.   Defendant's Motion to Dismiss Indictment with Prejudice (Doc. 14) is **GRANTED-IN-PART** and **DENIED-IN-PART**;

2.   With regard to Counts I through VI of the indictment, the Motion to Dismiss is **DENIED**;

3.   With regard to Count VII of the indictment, the Motion to Dismiss is **GRANTED** and Count VII is hereby **DISMISSED WITH PREJUDICE**.

4.   Defendant's Motion to Suppress (Doc. 21) is **DENIED**.

**DONE AND ORDERED** in Tampa, Florida on October 27, 2014.

Charlene Edwards Honeywell
United States District Judge

Copies to:
Counsel of Record and Unrepresented Parties, if any